Linake J. ROMERO and Fidelity Casualty Company of New York

v.

FRANK'S CASING CREW & RENTAL TOOLS, INC., Hartford Accident & Indemnity Company and Lloyd's of London.

Civ. A. No. 9595.

United States District Court
W. D. Louisiana,
Lafayette Division.
April 30, 1964.

Levy & Burleigh, Lawrence K. Burleigh, Lafayette, La., for Romero.

Davidson, Meaux, Onebane & Donohoe, James E. Diaz, Lafayette, La., for Fidelity Casualty Co. of New York.

Terriberry, Rault, Carroll, Yancey & Farrell, Francis Emmett, New Orleans, La., and Pugh & Boudreaux, Nicholls Pugh, Jr., Lafayette, La., for defendants.

PUTNAM, District Judge.

This purports to be a suit brought by Linake J. Romero against his former employer, Frank's Casing Crew & Rental Tools, Inc., a Louisiana Corporation and its insurance carriers, Hartford Accident & Indemnity Company and Lloyd's of London, both foreign corporations, under the Jones Act, Title 46 U.S.C.A. § 688, and for unseaworthiness under the general maritime law. Joined with these demands is a claim for maintenance and cure. The Fidelity and Casualty Company joins with Romero as a plaintiff claiming the sum of $47,500.00 jointly with him, while Romero prays for judgment individually in the sum of $327,-500.00 for injuries allegedly received while working on a submersible drilling barge in waters of the Gulf of Mexico some fifty miles from the coast of Louisiana.

We now consider motions by Frank's Casing Crew to dismiss as to both plaintiffs and for judgment on the pleadings, and a separate motion by the same defendant for summary judgment on grounds that Romero was not a seaman or member of the crew of any vessel.

We have concluded that these motions are good and they are sustained. From the pleadings and the evidence introduced on trial of the motions the following facts are undisputed:

(1) Plaintiff originally filed a suit in this court, for the very same accident, against Union Oil Company of California and its drilling contractor, the Offshore Company, this being civil action No. 8949 on the docket. In his complaint it was alleged that on November 8, 1961 he was injured while working on the drilling barge in question and that the accident was the direct result of negligence of the two defendants named in that suit. The suit sounded in maritime tort. The two defendants in suit No. 8949 filed a third-party action against Frank's Casing Crew, the substance of which is that Frank's had agreed to provide a five-man casing crew to Union Oil of California and agreed to indemnify and save this defendant harmless in connection with this operation from any loss or liability regardless of cause, directly or indirectly resulting from the performance of this agreement.

(2) Hartford, Insurance carrier for Frank's intervened in that suit alleging payments made to plaintiff Romero under the terms of the Longshoremen's and Harbor Workers' Compensation Act, as amended, Title 33 U.S.C.A. § 901 et seq., for a total of $4165.00 in benefits paid to the time of filing of its petition in intervention, plus medical expenses totaling $673.28 on account of said accident. It prayed that its rights of subrogation be

recognized and that it be paid by preference out of any amounts received by Romero as a result of that suit. This intervention is still pending in Civil Action No. 8949.

(3) On July 2, 1963, on the joint motion of Romero, Union Oil and the Offshore Company, Romero's claims against those two parties and their claim under the third-party action mentioned above against Frank's Casing Crew were dismissed as of nonsuit. It is stated in this motion that " * * * movers anticipate filing or have filed a separate action jointly, against Frank's Casing Crew and Rental Tools, Inc., and the Hartford Accident and Indemnity Co., * * *".

(4) In suit No. 8949, Romero claimed full indemnity by way of damages for all losses resulting from the injury in question, including pain, anguish, loss of earning capacity, loss of wages, loss of board and lodging, medical and surgical expenses and hospital and medicinal charges.

(5) As part of the settlement agreement in Civil Action No. 8949 Romero executed what is termed a "subrogation and indemnity contract", whereby he acknowledged the receipt of $47,500.00 cash as consideration for a release of Union Oil, Offshore Company, Pure Oil Company and their insurers, including Fidelity and Casualty and, according to the further provisions of this instrument, subrogated them to:

"* * * all of his claims, causes or rights of actions which he may or might have against Frank's Casing Crew and Rental Service, Inc. and its insurer, including the Hartford Accident and Indemnity Company, under the Jones Act and the Admiralty and Federal Maritime Laws of the United States, excluding therefrom all claims for maintenance and cure, transportation and that item of wages coming within the contractual right under maintenance and cure, and only up to the extent of the payment of Forty Seven Thousand Five Hundred and No/100 ($47,500.00) Dollars with

the full understanding that appearer may or might proceed against Frank's Casing Crew and Rental Service, Inc. and the Hartford Accident and Indemnity Company and other insurers as to these other rights * * *."

Additionally, Romero agreed to indemnify and hold harmless these parties from any demands which may or might arise from the accident in question in favor of Frank's Casing Crew and Hartford as a result of their obligations to him under the Longshoremen's and Harbor Workers' Act. The entire agreement is introduced in evidence in the present suit, No. 9595, in support of the motions under consideration.

(6) The defendants have not admitted that the structure upon which Romero was employed was a submersible drilling barge nor have they admitted that it was a vessel, but for the purpose of the motion for judgment on the pleadings and the motion to dismiss for failure to state a claim the allegations of the petition in this suit are taken as true. Consequently, we consider that for all purposes of these motions it is established as a fact that such was the case.

(7) Romero was the pusher or person in charge of the casing crew sent to the rig at the time of this accident.

CONCLUSIONS AND OPINION

In the light of the foregoing facts, we have no difficulty in reaching a conclusion that the plaintiff in the present suit, No. 9595, has received full indemnity for the losses which he claims to have suffered by reason of this accident, in the first suit filed, No. 8949. Assuming arguendo that he was a seaman, he had a choice of remedies. He could proceed against his employer under the Jones Act for damages for his injuries and for maintenance and cure, or he could sue the owners and operators of the offshore rig or drilling barge in maritime tort for damages for his injuries, or, he could sue the owners of the rig as third-party tort feasors under the maritime law

for personal injuries and his employer for maintenance and cure.

These rights are cumulative. Plaintiff can recover only once for any one injury. The items of damages claimed in the first suit, No. 8949, included the very same items which are claimed in the cause of action now before the Court for maintenance and cure, namely board, lodging, medical and surgical expenses and medicinal expenses, as are the items of damages claimed in this suit for mental anguish, pain and suffering, loss of earning capacity, loss of past and future wages, etc. which are claimed in the present suit in the Jones Act claim. Gypsum Carrier, Inc. v. Handelsman, 307 F.2d 525 (8 Cir. 1962); McCarthy v. American Eastern Corp., 175 F.2d 727 (3 Cir. 1949), cert. denied, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561 (1950); Muise v. Abbott, 160 F.2d 590 (11 Cir. 1947); Smith v. Lykes Bros.-Ripley S. S. Co., 105 F.2d 604 (5 Cir. 1939), cert. denied 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505 (1939).

In Handelsman, the Court said:

"Appellee had two causes of action, one for maintenance and cure under the general maritime law, and the other for negligence under the Jones Act. The two rights were 'independent * * * consistent and cumulative.' The trial court found in appellee's favor on both, and that determination has been sustained here. *Appellee was therefore entitled to an appropriate award on each cause of action as long as this did not result in a double recovery for the same items of damage.*" (Gypsum Carrier, Inc. v. Handelsman, supra, 307 F.2d at pages 532, 533. Emphasis supplied.)

Muise v. Abbott, supra, is directly in point, except that here there is an attempted contractual subrogation. In that case complainant was injured when he fell through an open hole on a wharf owned by the Gorton Company. He was a seaman and, at the time of the accident was returning to his ship after an author-ized evening ashore. Suit was filed against the owner of the wharf for negligence and prior to trial the case was settled by payment of $5500.00 to complainant with judgment to that effect being entered by the Court. Thereafter, suit was filed against the employer for maintenance and cure as a result of these same injuries. On appeal, the Court said:

"Thus it is true that the appellant's injury endowed him with two separate causes of action: * * *. But it does not follow from this, as the appellant contends, that he can recover full damages in both of the actions available to him. The reason for this is that the damages recoverable in each action to some extent overlap, *and the rule prevails in admiralty as elsewhere in the law that no one may recover compensatory damages more than once.*" (Emphasis supplied. 160 F.2d 590 at p. 592.)

We take judicial cognizance of the claims advanced by the pleadings in the original suit filed in this court and of the answer of the defendant wherein the damages set forth above under our paragraph 4, were put at issue by the defendants. Norris v. United States, 86 F.2d 379 (8 Cir. 1937) rev. on other grounds 300 U.S. 564, 57 S.Ct. 535, 81 L.Ed. 808 (1937); Bowe-Burke Mining Co. v. Willcuts, 45 F.2d 394, (W.D.Minn.1930); Cordle v. Kelly, 117 F.Supp. 662 (D.C. Minn.1953) affirmed 217 F.2d 757 (8 Cir. 1954).

That suit has been released and settled in full, consequently all of the claims put forward by the plaintiff have been satisfied.

We further conclude that allowance of such a subrogation as we find in the instant case would contravene public policy. The Federal Employers' Liability Act is an outgrowth of economic and social considerations which prompted the enactment of many workmen's compensation laws in the several states, and of the Longshoremen's and Harbor Workers'

Act by the Congress. Tiller v. Atlantic Coastline R. R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610 (1943); Kernan v. American Dredging Co., 355 U.S. 426, 78 S.Ct. 394, 2 L.Ed.2d 382 (1958). In Kernan, the history of the two statutes in question was reviewed and in relation to the considerations prompting enactment of the Jones Act, the Court said:

" * * * it came to be recognized that, whatever the rights and duties among persons generally, the industrial employer had a special responsibility toward his workers, who were daily exposed to the risks of the business and who were largely helpless to provide adequately for their own safety. Therefore, as industry and commerce became sufficiently strong to bear the burden, *the law, the reflection of an evolving public policy, came to favor compensation of employees and their dependents for the losses occasioned by the inevitable deaths and injuries of industrial employment, thus shifting to industry the 'human overhead' of doing business.* For most industries this change has been embodied in Workmen's Compensation Acts. *In the railroad and shipping industries, however, the FELA and Jones Act provide the framework for determining liability for industrial accidents.* But instead of a detailed statute codifying common-law principles, Congress saw fit to enact a statute of the most general terms, thus leaving in large measure to the courts the duty of fashioning remedies for injured employees in a manner analogous to the development of tort remedies at common law. But *it is clear that the general congressional intent was to provide liberal recovery for injured workers,* * * * it is also clear that Congress intended the creation of no static remedy, but one which would be developed and enlarged to meet changing conditions and changing concepts of industry's duty toward its workers." (Kernan v. American Dredging Co., supra, 78 S.Ct. at page 397–398. Emphasis supplied.)

The remedy given to seamen by the Jones Act is exclusive against their employers for negligence. The benefits of these special statutes are limited to the named beneficiaries and their named survivors as set forth under their terms. The defenses of assumption of the risk, fellow-servant's doctrine and other defenses normally available to tort feasors are abrogated in favor of broader protection of employees and to permit the extension of this rule to the insurers of such tort feasors by assignment or subrogation is unacceptable.

Were we to recognize and give validity to such an agreement, the third-party tort feasor in such cases, by the simple expedient of entering into a settlement with the injured party and taking a subrogation to his rights against his employer, assuming that such rights exist, could avoid completely the effects of his own negligence and in so doing would have the advantage of the limited defenses available in these cases. This would subvert the purposes of the law and contravene the public policy which led to its enactment.

In our opinion, the third-party tort feasors and their insurer in this case are limited to their claims against Romero's employer to whatever action in indemnity they may have under their contracts. These claims, although advanced in suit No. 8949, have been dismissed.

For the foregoing reasons, we sustain the motions to dismiss and for judgment on the pleadings. This conclusion makes it unnecessary to consider the motion for summary judgment on grounds that plaintiff was not a seaman.

The attorneys for defendant will present for signature formal judgment dismissing the complaint.