Thorwald BENSEN

v.

Thomas JACKSON, doing business as the Jackson Ocean Brand Manila Rope Company and the Thomas Jackson & Son Co., Reading, Pa.

Civ. A. No. 32591.

United States District Court
E. D. Pennsylvania.

Feb. 10, 1965.

Joseph M. Leib, Rubin & Leib, Philadelphia, Pa., for plaintiff.

Charles Robert Bernsee, Liebert, Harvey, Herting & Short, Philadelphia, Pa., for defendant.

JOHN W. LORD, Jr., Justice.

Plaintiff Thorwald Bensen, a seaman, was, on February 6, 1961, employed as a crewmember aboard the grain barge Oswego. He was then employed by the New York Elevating Company, operator of the boat. The vessel was owned by the Port of New York Authority.

In the present action, and certain previous actions instituted in the state and federal courts in New York, plaintiff claimed that while he was working on the Oswego's scaffolding a rope line broke, precipitating plaintiff to the deck below and resulting in serious and permanent personal injuries to him.

Plaintiff says that the rope line, which had broken while supporting the scaffolding, had been purchased by the Port of New York Authority (hereafter called "Port Authority"), owner of the vessel, from the defendants Thomas Jackson, etc. (hereafter called "Jackson"), and stored in its original packing until February 6, 1961, when the operator of the vessel, New York Elevating Company (hereafter called "N. Y. Elevating") placed certain fathoms of this rope in use aboard the Oswego.

This is the third or fourth action which has been instituted by this plaintiff in connection with the described incident and injury. First, plaintiff instituted an action solely against his em-

ployer, N. Y. Elevating, in the United States District Court for the Eastern District of New York. That action under the Jones Act, § 33 Merchant Marine Act of 1920, 46 U.S.C.A. § 688, alleged negligence of the employer and failure to provide a safe place to work (Defendants' Exhibit A).

It was mentioned above that three or four actions had been brought by this plaintiff. More precisely, there have been three proceedings, but the second, in a court of the State of New York, consisted of two separate causes of action. In the Supreme Court, Kings County, New York, Trial Term Part XIII, No. 158, trial was had before the Hon. Charles J. Beckinella and a jury from March 14 to March 28, 1963. The case was never submitted to the jury, however, in view of the following two developments.

The first was dismissal, on the motion of the Port Authority, of the cause of action under the Jones Act as to the Port Authority. As its reasons for granting the motion on March 25, 1963, the Court ruled that a Jones Act suit will not lie against one who is not an employer; and that there was no evidence that plaintiff had been employed by the Port Authority (Defendants' Exhibit G, pp. 4 and 5).

Rulings on motions by both defendants as to the first cause of action, unseaworthiness, and of N. Y. Elevating under the Jones Act, were reserved (Defendants' Exhibit G and certified copy of Clerk's Minutes, p. 373; Proceedings on March 25, 1963).

Meanwhile, plaintiff had on July 24, 1962, discontinued the action in the New York District Court in order to proceed in the State court proceeding described above.

Then in January of 1963, while the action in the New York Supreme Court was pending, but before it had been tried, plaintiff commenced the present suit against Jackson, alleging negligence in the manufacturing and processing of the rope in question. Defendant there-

after filed this motion for summary judgment.

After the Court's ruling on March 25, described above, the case came—a few days thereafter—to an abrupt end by settlement. Defendants' Exhibit F, set out later herein, is a photocopy of the release signed by plaintiff which provides in general language, on a stock form, that in consideration of $75,000, plaintiff released Port Authority and N. Y. Elevating, and the Grain Barge Oswego from all claims whatsoever for all time to come.

Defendants' Exhibit E is the official court reporter's certified transcript of the words spoken at the settlement, which are as follows:

"MR. FANNING [counsel for N. Y. Elevating] The above-entitled action is settled and discontinued without costs, disbursements or interest for $75,000 and other costs that have been made.

"The $75,000 will be fresh money of which $50,000 will be paid by the New York Elevating Company and $28,350 by the Port of New York Authority.

"THE COURT: Fresh money indicates that it is not inclusive of any outstanding liens. The only one you know about is the Workmen's Compensation Lien.

"MR. FANNING: Yes.

"Mr. QUINLAN [Counsel for Port Authority]: And Holy Family Hospital.

"MR. FANNING: There is no bill from them. As far as the plaintiff is concerned, that is the amount.

"THE COURT: In other words, it is net.

"MR. FANNING: As far as he is concerned. As far as the liens are concerned, we haven't any notice of it and we wouldn't pay it anyway.

"THE COURT: All right, gentlemen."

Defendants say, in their Motion for Summary Judgment, that the record speaks for itself and that there are no material questions of fact which are reasonably open to dispute. They contend that, as a matter of law, the plaintiff who has been once compensated cannot recover again for the same injury; that the release is general and bars further claims arising out of the same occurrence; and that the general rule as to release of joint tort-feasors applies.

Notwithstanding a number of counter-arguments and affidavits of plaintiff's counsel in the New York proceedings, the Court is constrained to agree with defendant. That conclusion can best be explained by first considering plaintiff's contentions.

He says, first, that

"The New York Court, having found that there was no fault, negligence or misconduct on the part of the shipowner in causing, creating or contributing to the rope breakage, was considering granting relief to those defendants under the appropriate Federal Act dealing with limitations of liability (48 U.S.C. § 183) [meaning 46 U.S.C. §§ 181–195]. Plaintiff, therefore, on advice of counsel, accepted an offer of $75,000 from the shipowner and the elevating company, and gave those defendants at that time an Admiralty Release. The sum only partially compensated the plaintiff for the serious injuries from which he was suffering. Plaintiff and his counsel at all times regarded the settlement as only partial compensation. By looking to the prime tortfeasors, plaintiff expected to make up the difference that he believed he was entitled to. * * * "

The answers to these contentions, and decision on the motion, require discussion of the following aspects of the case:

1. The quoted contentions of the plaintiff;

2. The effect of plaintiff's supporting affidavits;

3. Authorities relied upon by plaintiff; and

4. The controlling principles and authorities.

The foregoing points will be treated seriatim under abbreviated captions.

I. *Contentions of Plaintiff*

The quoted contention first states that the New York Court found that there was no negligence or misconduct on the part of the shipowner, Port Authority. The ruling of that Court, heretofore quoted, to the contrary simply decided that there was no evidence of employment to support a Jones Act Action. Exhibit G from the reporter's notes and the certified copy of the Clerk's docket show that ruling on all other motions was reserved.

Plaintiff says that the New York Court was considering a grant of Limitation of Liability under 46 U.S.C.A. §§ 181–195. Elsewhere, in the second affidavit, he states that under statute as well as applicable case law, both defendants in the New York action were entitled to set up this defense in their answer. In support, the affidavit refers to a 1956 case for the proposition that the bareboat charterer or operator as well as the owner may claim the statutory exoneration as an affirmative defense. Petition of National Bulk Carriers, Inc., 143 F.Supp. 46 (S.D.N.Y.1956). There is no necessity to quarrel with the stated proposition, for reasons to follow. It is noted, however, that the cited case was concerned exclusively with a motion to transfer. If by inference it supports the stated proposition, it scarcely may be regarded as definitive.

Affiant explains that he argued, in the New York proceedings, that the right to limitation was invested solely in an admiralty court, citing Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520 (1931). He tells of testimony by one expert at the trial that the Oswego was worth $4,000, and by another "stating a slightly different evaluation." He makes clear, however, that the application of the Limitation of Liability statute was

hotly contested, and that the value of the Oswego was never fixed at trial.

Affiant goes on to say that the threat of limitation of liability induced the $75,000 settlement, which plaintiff at all times regarded as only partial compensation.

■ It is perhaps not unfair to notice the apparent paradox. When limitation of liability to the value of the vessel (here about $4,000) is a serious threat, it is unusual for defendants to settle for a disproportionate total of $75,000. Further, the contention that the payment in settlement was regarded by plaintiff as partial compensation is scarcely surprising, since such payments are almost by definition the result of a compromise between the claims of the respective parties. More difficult for plaintiff to answer is the rather settled proposition that the subjective intent of the releasor has no legal effect. Dura Electric Lamp Co. v. Westinghouse Electric Corp., 249 F.2d 5, 7 (3rd Cir. 1957), contains the following comment by the late Judge Goodrich:

" * * * This affidavit does not claim that the company was lured into making this settlement. It simply says that it was not the intention of the president to release all claims against other conspirators. We think this affidavit does not change the application of the rule. When a man uses words which have a given legal effect he is bound by that effect in the absence of fraud or mistake none of which there is here. Combined Bronx Amusements v. Warner Bros. Pictures [132 F. Supp. 921 (S.D.N.Y.1955)], supra; Save Elec. Corp. v. General Elec. Co. [Civil No. 7146, N.D. Ohio, March 28, 1957], supra; Restatement, Torts § 885, Com. d (1939) 3 Williston, Contracts § 647 (Rev.Ed.1936)." Dura Elec. Lamp Co. v. Westinghouse Elec. Corp., 249 F.2d 5, 7 (3rd Cir. 1957).

Since, however, the releases were founded in admiralty, plaintiff contends that they do not function to release others as does the ordinary release, for which reason, says the second affidavit, "deponent's office did not object to the wording set forth therein."

Exhibit F, a photocopy of the release, has been re-examined, together with the transcript of the words spoken at settlement. It is not possible for this Court to attribute the special quality claimed by plaintiff to this release. The New York Supreme Court was not a court of admiralty, for one thing. There is also nothing about the release itself which necessarily exempts it from all general rules as to the legal effect of releases. The body of the release reads as follows:

"GREETING: KNOW YE, That THORWALD BENSEN a resident of 287 Warren Street, Uniondale, Long Island, New York, for and in consideration of the sum of SEVENTY FIVE THOUSAND Dollars ($75,000.00) lawful money of the United States of America, and other good and valuable considerations, to him in hand paid by THE PORT OF NEW YORK AUTHORITY and THE NEW YORK ELEVATING COMPANY, the receipt whereof is hereby acknowledged, has remised, released, and forever discharged, and by these presents does for himself, his heirs, executors and administrators, remise, release and forever discharge the said THE PORT OF NEW YORK AUTHORITY and THE NEW YORK ELEVATING COMPANY, their successors and assigns, and the Grain Barge "OSWEGO", her owners, agents, underwriters and charterers, their successors and assigns or their heirs, executors and administrators, of and from all and all manner of action and actions, cause and causes of actions, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, claims and demands whatsoever in law, in equity, or in ad-

miralty, which against the said THE PORT OF NEW YORK AUTHORITY and THE NEW YORK ELEVATING COMPANY, and the said Grain Barge "OSWEGO" he ever had, now has, or which his heirs, executors and administrators hereafter can, shall or may have for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day and date of these presents. * * * "

Since analysis of authorities will appear in later discussion, the matter will for the present be left with the observation that the release seems to speak for itself, with finality, to the effect that it is full and complete, without reservation.

## II. The Effect of Plaintiff's Affidavits

■ The plaintiff, responding to the present Motion for Summary Judgment, has filed the aforesaid two affidavits in opposition. Both are made by Morris Hirschorn, Esq., a member of the bar of the County and State of New York, and attorney of record for the plaintiff.

Most of the contentions of plaintiff, discussed in the preceding part of this opinion, are stated in those affidavits (filed December 10, 1964 and submitted January 6, 1965, respectively). It is to be noted that they are replete with arguments of law, being in part in the nature of legal briefs on this motion. In many respects they concern matters of pure opinion. Arguments concerning the law or the merits of the case contained in affidavits may be disregarded. Leo Feist, Inc. v. Debmar Publishing Company, 232 F.Supp. 623, 624 (E.D. Pa. 1964).

In at least one respect—the statement that the negligence count in the New York action was dismissed as to the New York Elevating Co.—there is no support for the statement in the Clerk's Minutes. As to that aspect of the history of the case, the record before this Court contradicts the affidavit.

So much of the affidavit as concerns the Limitation of Liability aspect of the case, the contest between the parties in respect thereto, and the circumstances of the settlement, is completely beyond the record upon which this Court is asked to decide the motion.

■ So far as the plaintiff's contentions, regardless of where or how they are stated, raise questions of law, the Court may properly decide them upon this motion. Rule 56(c), Fed.R.Civ.P. As to the specific requirements which must be met in order for affidavits to effect their purpose, however, it is clearly stated in the rule that the affidavits must set forth "such facts as would be admissible in evidence * * * "; they must "set forth specific facts showing that there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Plaintiff has had ample time to develop the facts necessary to support his motion in opposition to the Motion for Summary Judgment. So far as the assertions of fact in the plaintiff's affidavits go, they amount to little more than an ineffectual attempt to cast a cloud upon the validity of the release. See Thomas v. Mutual Benefit Health & Accident Ass'n, 220 F.2d 17, and cases collected at p. 18 (2nd Cir.1955). As was said there in a slightly different setting:

> " * * * Not thus easily may a litigant avoid the uses of summary judgment 'to pierce the allegations of fact in the pleadings' to reach the essential core of truth. Engl v. Aetna Life Ins. Co., 2 Cir., 139 F.2d 469, 472 (1943)," citing 3 Moore's Fed.Pract. 3175.

Thus it is clear that the plaintiff, responding to the motion, has not demonstrated the presence of the "genuine issue for trial" which Rule 56(e), Fed. R.Civ.P., requires. If the motion for summary judgment were to be denied, it would have to be for the reason that the movant's contention is incorrect as a matter of law, and not because the plaintiff has displayed the existence of substantial issues of fact.

### III. *Plaintiff's Authorities*

Plaintiff has cited several cases for the proposition that the New York release does not bar the present action as a matter of law. A few will be discussed. The Court disagrees with none of them. But none, however, are deemed to bear upon or, at least, govern the present situation.

The first is Jones v. Waterman S. S. Corp., 155 F.2d 992, 996 (3rd Cir.1946). Seaman Jones had brought simultaneous actions arising out of the same injuries. The first was against the Waterman Steamship Co., his employer, for wages and for maintenance and cure. The other was against the Reading Company, and sounded in tort. His personal injuries and loss of time from work had been caused by a fall, when ashore, into a ditch adjoining a siding of the Reading Railroad.

Pending the trial of his claim against the ship, he settled his claim against the railroad for $750. In the federal action which followed, it was held that the *ex contractu* right to maintenance and cure, as well as for wages, was not barred by the tort claim release given by Jones to the alleged tort-feasor.

That result seems completely reasonable, but is deemed to have no applicability here.

Next is The Ross Coddington, 6 F.2d 191, 192 (2nd Cir.1925). It quite properly held that a payment made by an employer to an injured employee, under the Workmen's Compensation Act of the state, for which a release was given, was not for damages for negligence, and did not bar an action by the employee against a third party for negligence causing the injury.

From the foregoing, however, plaintiff argues that the plaintiff's New York claim against the ship for unseaworthiness did not depend upon negligence, and by analogy was not barred. That argument appears to be answered by the cases cited in the final section herein. In any case, however, they seem inapplicable since the record—as has been pointed out more than once already—shows that the Jones Act claim, which *did* depend upon negligence, was never dismissed by the New York state court as to the employer and ship operator, N. Y. Elevating.

A separate line of cases is cited for the contention that "maritime not state law sets forth the rules to be applied in the construction of an admiralty release." The principal ones are:

Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). It reviewed the outcome of a Jones Act case which had been brought in a Pennsylvania state court. The plaintiff had executed a release for $100 under conditions casting grave doubt upon his physical competency as well as freedom from duress. Judgment for the defendant *non obstante veredicto* had been decreed by the Pennsylvania trial court *en banc* on the ground that the plaintiff had not sustained his burden, under Pennsylvania law, as required to invalidate the release. The United States Supreme Court held that the validity of the release should not depend upon local procedural law. The Jones Act is to be liberally construed for the seaman's protection. Relevant to an appraisal of the execution of the release are such factors as the adequacy of the consideration and the nature of the medical and legal advice available to the seaman at the time of signing the release.

Also cited is Maynard v. Durham & S. R. Co., 365 U.S. 160, 81 S.Ct. 561, 5 L.Ed. 2d 486 (1961). It was a Federal Employers' Liability Act case by a railroad employee who had signed a release in exchange for $144.60. Analogous principles were applied, since the F.E.L.A., 45 U.S.C.A. § 51, is incorporated in terms in the Jones Act, 46 U.S.C.A. § 688.

The indisputable authority of those cases would have greater impact if, for instance, the present action were in admiralty. Again, the cases might have more bearing were it charged that there was some fraud or overreaching in connection with the settlement. To the contrary, this is a diversity tort action; the

consideration of $75,000 is not suspiciously low; and the release was given on advice of counsel and by agreement reached in the very presence of the New York Court. For the reasons implied in the preceding comment it is apparent that the cases could be distinguished. It is unnecessary to do so, however, since the present matter can be decided without recourse to local procedural law and in full accord with ample authority of decisions of courts of the United States.

Other contentions and authorities need not be recited here in view of the propositions stated in the cases discussed in the section to follow, which are believed to be applicable and controlling.

### IV. *Controlling Principles and Authorities*

Even were this a Jones Act case instead of a diversity tort action, plaintiff could recover only once for any one injury. Romero v. Frank's Casing Crew and Rental Tools, Inc., 229 F.Supp. 41 (W.D.La.1964). In that case a maritime tort release given to certain oil companies was held to bar a subsequent Jones Act suit against plaintiff's employer, for whom plaintiff was working on drilling for the oil companies. Thus it seems pointless to give special weight to the finely printed words Admiralty General Release which appear at the upper left corner of Defendants' Exhibit F. See also McCarthy v. American Eastern Corp., 175 F.2d 724 (3rd Cir. 1949).

It should not be assumed that the rule requiring "jealous scrutiny of any release executed by a seaman" is to be applied here. Bonici v. Standard Oil Company, 103 F.2d 437 (2nd Cir. 1939). Instead, the following quotation from Johnson v. Andrus, 119 F.2d 287, 288 (2nd Cir. 1941), is deemed applicable:

> " * * * there was not a shadow of overreaching in its procurement; to set it aside would in effect deny to seamen the freedom to settle their controversies upon their own terms, which * * * would serve in no sense to protect them, but on the contrary would force them to a suit in

every case." Johnson v. Andrus, 119 F.2d 287, 288 (2nd Cir. 1941).

Although the New York state action did not proceed to jury verdict, it is nevertheless worth considering the doctrine of estoppel. Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927) concerned successive actions to recover damages for the same injury. The Court applied the general rule "that a judgment or decree upon the merits concludes the parties as to all *media concludendi* or grounds for asserting the right, known when the suit was brought." In this connection it is noted that the present defendants were given notice to come in and defend in the New York proceeding; thus the presence of a claim against them was obviously known to the plaintiff at the time of settlement.

Since the New York action was never submitted to the jury the foregoing case is applicable only by analogy. As witness to the strong policy against piecemeal litigation, however, it cannot be denied. At 274 U.S. 320, 47 S.Ct. at 602, the court collects authority for the longstanding principle that

> " * * * the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time. * * * "

It is the opinion of this Court that the efficacy of the release is governed by state law, on the reasoning of Bank of America National Trust & Savings Ass'n v. Parnell, 352 U.S. 29, 33, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956). It concerned a diversity suit by a California bank in a federal district court in Pennsylvania to recover the value of certain United States bonds alleged to have been converted in Pennsylvania. It was held that although the plaintiff's original cause of action was created by federal law,

> " * * * The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here, ex-

clusively involving the transfer of Government paper between private persons, is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular State regarding the liability of a converter. This is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern." Bank of America National Trust & Savings Association v. Parnell, 352 U.S. 29, 33–34, 77 S. Ct. 119, 121 (1956).

Enough has already been said to show that the present private litigation has fewer federal overtones than that of the case last quoted. Thus state law of New York or Pennsylvania is deemed applicable—and it is not necessary to distinguish between the New York and Pennsylvania aspects involved since the law, for all that is before the court, is the same in both states concerned. In fact, the principles applicable here, as stated in the following case, are those of the Restatement of Torts § 885, believed to be the least technical and least stringent of any rules of any state which could be invoked. Matland v. United States, 285 F.2d 752 (3rd Cir. 1961).

In the Matland case, the executrix for the estate of an airline passenger brought a Federal Tort Claims action against the United States for the alleged negligence of government employees resulting in a collision of airliners, and the death of the widow-executrix's husband. 28 U.S.C.A. § 1346(b). The court noted that

" * * * The Executrix settled the claim against the airlines for a consideration of $75,000 on behalf of the widow and children. The release stated that for the consideration paid 'I do hereby release and forever discharge [United Air Lines, Inc. and Trans World Air Lines, Inc. and their employees] from any and all actions, causes of actions [etc. * * * ] sustained by me in consequence of [a certain specified] acci-

dent * * *.' " Matland v. United States, 285 F.2d 752, 753 (3rd Cir. 1961).

■ Most of the contentions of the present plaintiff are echoed and disposed of, adversely to the plaintiff, in the course of further discussion by the late Judge Goodrich. The following principle was deemed applicable:

"Restatement, Torts § 885(1) (1939), [which] provides:

" '(1) A valid release of one tortfeasor from liability for a harm, given by the injured person, discharges all others liable for the same harm, unless the parties to the release agree that the release shall not discharge the others and, if the release is embodied in a document, unless such agreement appears in the document.' "

The conclusion of the Court is embodied in the following quotation:

" * * * The Restatement rule does not rely upon any technical notion of what constitutes a joint tortfeasor. Since the plaintiff asserted the liability of the *airlines* in a former suit, we think the Supreme Court of Arizona would apply the Restatement rule in this case despite plaintiff's *present denial of liability* on the part of the airlines." Matland v. United States, 285 F.2d 752, 755 (3rd Cir. 1961) [Emphasis added].

It is obvious that the Pennsylvania rule as to releases is more stringent than that of the Restatement and of such general federal law as there may be. Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239 (1942). It has not been shown that the applicable New York law as to releases is any more favorable to plaintiff. True, plaintiff has argued that a partial release is in New York construed as a covenant not to sue, but that contention may be disregarded since this Court finds the New York release (Exhibit F) to be general and complete rather than partial. In those circumstances, and giving the plaintiff the benefit of all doubts as to

the applicable state and federal law as to the effect of releases, plaintiff's position cannot be maintained.

For all the foregoing reasons, it is the conclusion of this Court that the Defendants' Motion for Summary Judgment be granted and it is so ordered.