# BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION v. PARNELL.

NO. 21.

Argued October 18, 1956.—Decided November 13, 1956.

*Erwin N. Griswold* argued the cause for petitioner. With him on the brief were *Robert L. Kirkpatrick* and *John G. Buchanan.*

*Edward Dumbauld* argued the cause and filed a brief for respondent in No. 21.

*Harvey A. Miller, Jr.* argued the cause for respondent in No. 22. With him on the brief were *Harvey A. Miller* and *J. Lee Miller.*

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

Petitioner, alleging diversity of citizenship, brought suit in the District Court for the Western District of Pennsylvania alleging that in September and October 1948 two individual defendants, Parnell and Rocco, and two corporate defendants, the First National Bank in Indiana and the Federal Reserve Bank of Cleveland, had converted 73 Home Owners' Loan Corporation bonds which belonged to petitioner. Only Parnell and the First National Bank are respondents here, since the Federal Reserve Bank was dismissed, on its motion, after petitioner had presented its case in the District Court, and since Rocco did not appeal from the District Court's judgment.

At the trial it appeared that these bonds were bearer bonds with payment guaranteed by the United States. They carried interest coupons calling for semi-annual payment. They were due to mature May 1, 1952, but pursuant to their terms, had been called on or about May 1, 1944. On May 2, 1944, the bonds disappeared

while petitioner was getting them ready for presentation to the Federal Reserve Bank for payment. In 1948 they were presented to the First National Bank for payment by Parnell on behalf of Rocco. The First National Bank forwarded them to the Federal Reserve Bank of Cleveland. It cashed them and paid the First National Bank, which issued cashier's checks to Parnell. Parnell then turned the proceeds over to Rocco less a fee—there was conflicting testimony as to whether the fee was nominal or substantial.

The principal issue at the trial was whether the respondents took the bonds in good faith, without knowledge or notice of the defect in title. On this issue the trial judge charged:

> "As I have indicated, however, in the case—and if you find in this case that the plaintiff owned these bonds, that they were stolen from it—then the burden of proof so far as this plaintiff is concerned is to show that fact, that these bonds were owned by it, that they were lost by it in the manner as shown by its evidence. Then the two defendants, Parnell and the bank, not claiming to be owners for value, but as conduits for redemption, must come forward and they then have the burden of showing that they acted innocently, honestly, and in good faith. . . ."

The jury brought in verdicts for petitioner against both respondents. On appeal, the Court of Appeals for the Third Circuit, the seven circuit judges sitting *en banc,* reversed, with three judges dissenting. It held that the District Court had erred in treating the case as an ordinary diversity case and in regarding state law as governing the rights of the parties and the burden of proof. 226 F. 2d 297. It considered our decision in *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, controlling and held that federal law placed the burden of proof on petitioner

to show notice and lack of good faith on the part of respondents. The court further found that there was no evidence of bad faith by the First National Bank since the bonds were not "overdue" as a matter of federal law when presented to it and therefore directed entry of judgment for it. The court found that there was evidence of bad faith on the part of Parnell but ordered a new trial because of the erroneous instructions.

The dissenters agreed in applying the doctrine of the *Clearfield Trust* case to determine the nature of the contract and the rights and duties of the United States as a party but not the rights of private transferees among themselves. They, like the majority, looked to federal law to determine whether the bonds were "overdue paper" when presented to the First National Bank. They concluded that since the respondent bank knew of the call, as to it, the bonds became demand paper and that the bank took the paper an unreasonable length of time after maturity, as advanced by the call.

In the view of the dissenters, state law was controlling with respect to proof of good faith and the burden thereon. They found that state law placed the burden of proof on respondents to demonstrate their good faith, and that there was sufficient evidence to support the jury's verdict that the burden of proving good faith had not been sustained even if, with respect to the respondent bank, the bonds were not to be regarded as demand paper taken an unreasonable time after maturity, as advanced by the call.

Petitioner sought a writ of certiorari to review the judgments of the Court of Appeals. Because the determination of the applicable law raised an important issue of federal-state relations, we granted certiorari. 350 U. S. 963.

The District Court in this suit, based on diversity jurisdiction, for the conversion in Pennsylvania of pieces of

paper of defined value, deemed itself a court of Pennsylvania in which, in view of the nature of the claim, Pennsylvania law would govern. See *Guaranty Trust Co.* v. *York,* 326 U. S. 99, 108. But respondents claim, and the Court of Appeals sustained them, that the decision in *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, compels the application of federal law to the entire case. The Court of Appeals misconceived the nature of this litigation in holding that the *Clearfield Trust* case controlled. In that case we held that a suit by the United States to recover on an express guaranty of prior endorsements on a Government check with a forged endorsement was governed by federal law. The basis for this decision was stated with unclouded explicitness:

> "The issuance of commercial paper by the United States is on a vast scale and transactions in that paper from issuance to payment will commonly occur in several states. The application of state law, even without the conflict of laws rules of the forum, would subject the rights and duties of the United States to exceptional uncertainty." 318 U. S., at 367.

Securities issued by the Government generate immediate interests of the Government. These were dealt with in *Clearfield Trust* and in *National Metropolitan Bank* v. *United States,* 323 U. S. 454. But they also radiate interests in transactions between private parties. The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here, exclusively involving the transfer of Government paper between private persons, is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular State regarding the liability of a converter. This is far too speculative, far too remote a possibility to jus-

tify the application of federal law to transactions essentially of local concern.

We do not mean to imply that litigation with respect to Government paper necessarily precludes the presence of a federal interest, to be governed by federal law, in all situations merely because it is a suit between private parties, or that it is beyond the range of federal legislation to deal comprehensively with Government paper. We do not of course foreclose such judicial or legislative action in appropriate situations by concluding that this controversy over burden of proof and good faith represents too essentially a private transaction not to be dealt with by the local law of Pennsylvania where the transactions took place. Federal law of course governs the interpretation of the nature of the rights and obligations created by the Government bonds themselves. A decision with respect to the "overdueness" of the bonds is therefore a matter of federal law, which, in view of our holding, we need not elucidate.

This conclusion requires reversal of the judgments of the Court of Appeals but not reinstatement of the judgments of the District Court. The Court of Appeals did not originally consider all the points raised by respondents. Moreover, since the Court of Appeals misconceived the applicable law, it is for that court to review the judgments of the District Court in the light of the controlling state law. The Court of Appeals has not decided what the governing state law on burden of proof is, and it is the court which should so decide. Likewise, if state law casts the burden on respondents to demonstrate their good faith, it is for the Court of Appeals to assess the evidence in light of that standard.

The judgments of the Court of Appeals for the Third Circuit are therefore reversed and the cases are remanded to that court for proceedings in conformity with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS, dissenting.

We believe that the "federal law merchant," which *Clearfield Trust Co.* v. *United States,* 318 U. S. 363, 367, held applicable to transactions in the commercial paper of the United States, should be applicable to all transactions in that paper. Indeed the Court said in *National Metropolitan Bank* v. *United States,* 323 U. S. 454, 456, that "legal questions involved in controversies over such commercial papers are to be resolved by the application of federal rather than local law." Not until today has a distinction been drawn between suits by the United States on that paper and suits by other parties to it. But the Court does not stop there. Because this is "essentially a private transaction," it is to be governed by local law. Yet the nature of the rights and obligations created by commercial paper of the United States Government is said to be controlled by federal law. Thus, federal law is to govern some portion of a dispute between private parties, while that portion of the dispute which is "essentially of local concern" is to be governed by local law. The uncertainties which inhere in such a dichotomy are obvious. Cf. *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205; *Davis* v. *Department of Labor,* 317 U. S. 249.

The virtue of a uniform law governing bonds, notes, and other paper issued by the United States is that it provides a certain and definite guide to the rights of all parties rather than subjecting them to the vagaries of the laws of many States. The business of the United States will go on without that uniformity. But the policy surrounding our choice of law is concerned with the convenience, certainty, and definiteness in having one set of rules governing the rights of all parties to government paper, as contrasted to multiple rules. If the rule of the *Clearfield Trust* case is to be abandoned as to some parties, it should be abandoned as to all and we should start afresh on this problem.