**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF PUERTO RICO**

v.

**Victor Manuel ZEQUEIRA and Alejandrina Lopez De Zequeira.**

**Civ. No. 238-67.**

United States District Court
D. Puerto Rico.
Sept. 9, 1968.

Ramirez, Segal & Latimer, Santurce, P. R., for plaintiff.

Juan Mari Bras, Rio Piedras, P. R., for defendants.

## ORDER

FERNANDEZ-BADILLO, District Judge.

This is an ordinary foreclosure of mortgage proceeding in which the defendants failed to answer the complaint or otherwise defend. Judgment by default was entered on July 14, 1967 and on August 2, 1967 the Court ordered the Special Master to proceed to sell at public auction the property referred to in the judgment. The sale was set for December 5, 1967 at 10:00 A.M. On December 4, 1967 a meeting was held in chambers to consider a motion filed by defendant Victor Manuel Zequeira in which he requested an order to the effect that an offer for the purchase of the property at the public auction for less than $351,000 would not be accepted. At this meeting the parties entered into an agreement which favored defendants and consequently the motion was denied.

The Court finds that the judicial sale held on December 18, 1967 was in accordance with the agreement reached by the parties on December 4, 1967 by virtue of which defendant would pay $12,000 on or before December 18th 1967; an additional $20,000 on or before January 15th, 1968 and the remaining of the additional installments on or before January 31st, 1968. Plaintiffs in turn bound themselves to postpone the sale of the mortgaged property fixed for December 5, 1967, subject to fulfillment by defend-ant of the above mentioned engagements. On this basis, plaintiffs adjourned the sale till December 18 at 10:00 A.M. in order to allow defendants to comply with their first engagement. It should be noted that the Special Master was authorized by the Order of Execution of this Court to adjourn the sale from time to time without further publication.

The sale was held on December 18, 1967 at 10:00 A.M. Defendants' counsel admitted during the hearing of their motion to set aside the sale that his clients did not attempt or make any effort during the course of that day to pay the $12,000 which had then become due and payable in accordance with said agreement. He also admitted that his clients did not come to the Court on said day to try to deposit this amount with the Registry of the Court in order to show their compliance with the December 4 agreement. Furthermore the record shows that defendant conceded that the interpretation of the aforesaid agreement was that propounded by plaintiff. This is shown by the fact that counsel for defendants considered unnecessary that testimony were offered by plaintiff at the hearing and stipulated that what plaintiff stated in its motion opposing the setting aside of the sale is what the witnesses would have testified.

This preliminary review of the facts brings us to the main question presented in this case which turns upon whether state law is to be applied in a foreclosure proceeding between private parties, specifically, in the interpretation of a clause contained in the mortgage deed.

Defendants have brought a motion to set aside the judicial sale held on December 18, 1967. In their brief they substantially contend that the application of state law would affect the minimum bid requirement contained in clause 11 of the mortgage deed.[1]

---

1. Clause 11 of the mortgage deed reads as follows:

 "To serve as basis for the first public sale which may be made in the event of sale by execution, the debtor appraises the mortgaged property, waiving any new appraisal or action taken to such end, in the sum of $309,400.00."

 The foreclosure sale produced an award of $261,552.83 which was offered by plaintiff, the only bidder present at the sale.

■ It should be noted that defendant's attack is upon a sale judicially confirmed by order of January 5, 1968. Confirmation of judicial sales rests in the sound discretion of the court, and approval should not be refused except for substantial reasons. Quinn v. S. S. Jian (D.C.Md.1964) 235 F.Supp. 975; United States v. Heasley (C.A. 8th Cir.1960) 283 F.2d 422.

Defendants attack the sale upon the ground that the sale price obtained is less than that which was stipulated in clause 11 of the mortgage deed to serve as basis for the first public sale. As aforementioned the appraisal of the mortgaged property fixed in the deed was for the sum of $309,400.00. Plaintiff claims that the language contained in clause 11 of the deed was taken *ad verbatim* from Article 127 of the Puerto Rico Mortgage Law (30 L.P.R.A. § 223) which in the part pertinent herein reads as follows:

"The mortgage deed shall state the value at which the contracting parties appraise the estate, in order that it may serve as a basis for the first public sale which may be made, in the event that, the term of the loan having expired, the registry of the property does not show the payment of said loan."

In furtherance of his argument plaintiff cites as applicable to the present situation the case of Font v. Registrar, 52 P.R.R. 820, in which the Supreme Court of Puerto Rico held:

"The fact that at the time of the constitution of a mortgage the contracting parties appraise the estate in order that such appraisal may serve as a basis for the first public sale, as in this case, does not mean that the creditor waives his right to bring an ordinary action for the collection of the debt, ignoring the special security constituted in his favor by the debtor, or to foreclose the mortgage in an ordinary suit."

Defendants reply that the *Erie* doctrine [2] only requires that state law be applied in diversity cases, and that state law is not controlling here because jurisdiction was not based on diversity of citizenship.

■ It is a well settled principle that the applicability or inapplicability of the *Erie* rule in a case before a federal court does not depend upon the jurisdictional basis of the action. As Moore has stated in his Treatise,[3]

"It has frequently been stated that the *Erie* doctrine requires the federal courts to apply state law in diversity cases and that the doctrine has no application in actions in the federal courts on some other jurisdictional ground. While this is true in the vast number of cases, it is not a completely accurate statement of the law. The law to be applied is keyed to the nature of the issue before the court; if non-federal, state substantive law is applied; if a federal matter is before the court, federal law will be applied * * *"

Citing a decision of the Second Circuit Moore [4] notes that,

"* * * despite repeated statements implying the contrary, it is the *source* of the right sued upon, and not the ground on which federal jurisdiction over the case is founded, which determines the governing law * * * Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law."

In United States v. View Crest Garden Apts., Inc. (9th Cir., 1959) 268 F.2d 380, cert. den. 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120, the Court followed this rule in adopting federal law in an action

2. Erie R. Co. v. Tompkins (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.

3. Vol. 1A, Second Edition So. 305(3) p. 3052 et seq.

4. Moore's Federal Practice, supra, § 0.305(3) p. 3055.

to foreclose an FHA mortgage and for the appointment of a receiver. There the Court of Appeals said:

"No contention is made by the government that in the event Washington State law applies the trial court was in error in refusing the appointment. The contention is that it erred in applying state law rather than federal law as controlling. We take the view that the government is correct in its contention. In reaching our conclusion we have found that in this case as in others with which we have struggled the solution is not without difficulty. But we do find it to be clear that the *source* of the law governing the relations between the United States and the parties to the mortgage here involved is federal."

Bank of America National Trust & Savings Ass'n v. Parnell (1956) 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93, cited in McKenna v. Wallis (5th Cir., 1965) 344 F.2d 432, posed this same question of the origin of the right and relations involved. Adopting the local law of Pennsylvania as governing the controversy over burden of proof and good faith of respondents who took bonds guaranteed by the United States the Supreme Court stated:

" * * * The present litigation is purely between private parties and does not touch the rights and duties of the United States. The only possible interest of the United States in a situation like the one here, exclusively involving the transfer of Government paper between private persons, is that the floating of securities of the United States might somehow or other be adversely affected by the local rule of a particular state regarding the liability of a converter. This is far too speculative, far too remote a possibility to justify the application of federal law to transactions essentially of local concern."

Even in cases where the relations between the parties arise under federal law

it has been ruled that state law can be adopted to implement and fulfill federal policies involved. United States v. View Crest Garden Apts., Inc. supra; United States v. Montgomery (D.C.Kansas 1967) 268 F.Supp. 787. Both these actions were foreclosure proceedings brought by the United States on a mortgage held by federal agencies.

The case at bar deals with a transaction between two private parties involved in a creditor-debtor relation which exists by force of state law. The legal consequences that arise are determined by state law. There is no supervening federal interest or federal statute to be enforced. It is a claim wholly local in character based on the terms of an agreement created by local law. The interpretation of the agreement is governed by what Puerto Rican law, statutory and decisional, says.

There is no federal law of mortgages except such as is contained in specific statutes. Southland Financial Corp. v. Oil Screw Mary Evelyn (D.C. Louisiana, 1965) 248 F.Supp. 520. It has been recognized that the validity, effect and construction of a mortgage lien is determined by the law of the state in which the mortgaged property is located. 59 C.J.S. Mortgages § 151, In Re American Fuel & Power Co. (6th Cir. 1945) 151 F.2d 470, at p. 481, Metropolitan Life Insurance Co. v. Kane (7th Cir., 1941) 117 F.2d 398, 133 A.L.R. 1163.

The Court also recognizes that this being a judicial sale subject to confirmation the provisions of 28 U.S.C. §§ 2001 and 2002 are applicable. Nowhere in the procedures there outlined for the public sale of a property is a minimum price required. On the other hand, it is expressly provided that "no private sale shall be confirmed at a price less than two-thirds of the appraised value." The requirements of appraisal and minimum price is limited to private sales.

The present action involves a public sale pursuant to a default judgment foreclosing a mortgage. The court

finds that the sale was made in the manner prescribed by law. No minimum bid is required either by state law (see Font v. Registrar, supra) or by section 2001 of Title 28. There is no conflict here between state and federal law.

Accordingly, defendants' motion to set aside the judicial sale is hereby denied and plaintiff's motion of June 27, 1968 for an order requiring defendants to deposit with this Court all rental payments of the property here involved is denied as moot.

It is so ordered.