UNITED STATES of America, Appellee,

v.

Alfred CATINO, Defendant,

Public Service Mutual Insurance Co., Anthony Catino, Theresa Peduto, Mary Mariccio and Jerry DeFeo, Appellants.

Nos. 1291, 1292, 1293, 1294, 1295, Dockets 77-1162 to 77-1166.

United States Court of Appeals, Second Circuit.

Argued June 16, 1977.

Decided Aug. 22, 1977.

H. Elliot Wales, New York City, for appellant Public Service Mut. Ins. Co.

J. Jeffrey Weisenfeld, New York City (Nancy Rosner, New York City, of counsel), for appellants Catino, Peduto, Mariccio and DeFeo.

Jane W. Parver, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, James P. Lavin, Audrey Strauss, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before WATERMAN, SMITH and OAKES, Circuit Judges.

OAKES, Circuit Judge:

The surety and indemnitors of a $50,000 bail bond posted to obtain the release from confinement of Alfred Catino appeal from a judgment of forfeiture entered in the United States District Court for the Southern District of New York, Milton Pollack, *Judge.* The bail bond in question was furnished on September 28, 1973, after Catino was arraigned on narcotics charges in the district court. Following Catino's conviction, his bail was continued until the time of sentencing, which occurred on February 26, 1974. At that time bail was continued over Government objection pending appeal; the bail bond was not rewritten, despite questioning by Judge Pollack addressed to the sufficiency of the $50,000 bail. Neither the surety nor the indemnitors at that time or thereafter appeared to object or complain about the continuance of bail.

Catino's conviction was affirmed in *United States v. Mallah,* 503 F.2d 971 (2d Cir. 1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). He was instructed to surrender on March 17, 1975. He failed to appear, and a bench warrant was issued for his arrest. On February 14, 1977, it appearing that Catino had jumped bail and was a fugitive from justice, the Government moved to have Catino's bail forfeited and judgment entered against the surety, pursuant to Fed.R.Crim.P. 46(e)(1), (3). The surety company and indemnitors (hereafter "appellants") asserted in opposition to the motion that the bail bond was exonerated by Judge Pollack's pronouncement of sentence following conviction or by his continuance of bail status pending appeal without the consent of the surety. Judge Pollack granted forfeiture on March 9, 1977, *United States v. Catino,* 427 F.Supp. 1009 (S.D.N.Y.1977), and this appeal followed. We affirm.

At the outset we must determine whether state or federal law governs questions of interpretation in connection with federal bail bonds. While three circuits have held that state law governs, *United States v. D'Anna,* 487 F.2d 899, 900, 901 (6th Cir. 1973); *United States v. Gonware,* 415 F.2d 82, 83 (9th Cir. 1969); *Palermo v. United States,* 61 F.2d 138, 140 (8th Cir. 1932), *cert. denied,* 288 U.S. 600, 53 S.Ct. 318, 77 L.Ed. 976 (1933), we believe, along with the Fifth Circuit, *United States v. Miller,* 539 F.2d 445, 448, 449 (5th Cir. 1976) (per curiam), that federal law should govern. Federal regulation of bail procedures in the federal courts is pervasive, as the court below noted, 427 F.Supp. at 1010 n. 3 (citing the Bail Reform Act of 1966, 18 U.S.C. § 3141 *et seq.,* and Fed.R.Crim.P. 46), and federal bail bonds may have distinctive features not found in state bonds. More importantly, federal fiscal interests are affected, since it is the United States government that is seeking recovery of the forfeiture. The involvement of these interests makes application of federal law appropriate, *see Bank of America National Trust & Savings Association v. Parnell,* 352 U.S. 29, 33, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956). It may be that the need for national uniformity and certainty may be less compelling here than in a case like *Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (federal commercial paper), since bail bond practice apparently varies from one federal district to another. But there is nothing "peculiarly local" about bail bond law, nor would any important state policies be affected by a decision to apply federal law to bail bonds in federal court, *compare United States v. Yazell,* 382 U.S. 341, 352–53, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966) (declining to apply federal law, despite a Federal Government fiscal interest, in an area involving state policies regarding the family and family property). Accordingly, we hold that the interpretation of federal bail bonds is a matter of federal law. The development of federal common law in this area may, of course, be informed by relevant state law holdings. *See generally* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's the Federal Courts and the Federal System* 762–76 (2d ed. 1973).

The bond here in issue includes two provisions that are not found in the illustrative form for an appearance bond (Form 17) appended to the Federal Rules of Criminal Procedure. The provisions are as follows:

[T]he defendant is to abide any judgment entered in [the above entitled] matter by surrendering himself to serve any sentence imposed and obeying any order or direction in connection with such judgment as the court imposing it may prescribe.

. . . . .

It is agreed and understood that this is a continuing bond which shall continue in full force and effect until such time as the undersigned are duly exonerated.

427 F.Supp. at 1012. By the terms of this bond, therefore, it continued in effect until such time as the surety and indemnitors were exonerated. Fed.R.Crim.P. 46(f), moreover, provides that "when the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail." Under that rule the surety may also be exonerated "by a deposit of cash in the amount of the bond or by timely surrender of the defendant into custody." Under the provisions of 18 U.S.C. § 3142, retained by the Bail Reform Act, a surety at any time may arrest the party charged and bring him before the appropriate authority, who shall recommit the party so arrested and endorse on the recognizance "the discharge and exoneratur [sic] of such surety . . .," thus enabling the surety to protect himself from potential liability when he feels that his risk is too great. No exoneration under any of these provisions took place here.

Appellants argue that they were exonerated when Catino surrendered on the date of sentencing or, alternatively, that continuation of the district court bond through the appellate process without their consent constituted a material modification of the surety contract and accordingly exonerated their obligations. These arguments are in essence the same, since both require a finding that appellants agreed to do no more than surrender Catino for sentencing. In

support of this contention, appellants point to the practice in the United States District Court for the Southern District of New York. That practice was evidenced by the statement of a deputy clerk offered as proof herein, to the effect that an appeal bond is separate and distinct from a trial bond and must be executed with the clerk following approval by the United States Attorney's office and a court hearing. Judge Pollack and the United States Attorney, it is argued, should have had Catino post a new appeal bond before he was released. Their omission, the argument runs, should not be charged to appellants, who produced Catino for sentencing.

In *United States v. Miller, supra*, 539 F.2d at 448–49, the Fifth Circuit held:

[W]hen, as here, the bond states that the principal is to surrender himself for execution of the sentence and to abide by orders of the court in connection with the judgment, the pronouncement of sentence does not exonerate the surety . . . . [T]here is no *per se* federal rule that pronouncement of sentence exonerates a surety. . . . During [post-sentencing events] a surety remains liable on the bond if . . . [it] has agreed to such liability . . . by the language of its undertaking.

*Accord, United States v. Gonware, supra*, 415 F.2d at 84; *United States v. Wray*, 389 F.Supp. 1186, 1190–91 (W.D.Mo.1975). *Contra, United States v. D'Anna, supra* (applying Michigan law). Appellants argue that these cases are limited to circumstances in which execution of sentence is stayed for a brief period of time to allow a defendant to put his affairs in order, as opposed to the more extended time involved when a defendant is free pending appeal. But the increased risk for the surety, resulting from the increased chance of flight once the defendant knows he has been convicted and knows he is not being placed on probation, is similar in both cases. The risk of flight after appeal has been unsuccessful may be higher, but in the interim the surety always has the option of arresting the defendant and surrendering him to the court.

Appellants also seek to distinguish *Miller, Gonware* and *Wray, supra*, on the ground

that, while the district courts in those cases retained jurisdiction during the stay of sentence, the court below lost all jurisdiction once the notice of appeal was filed. But, as held in *United States v. Black*, 543 F.2d 35, 37 (7th Cir. 1976), "[t]he filing of a notice of appeal, although transferring jurisdiction over the case from the district court to the Court of Appeals, does not render the district judge powerless or without jurisdiction to enforce the conditions of a bond under which defendant has been released pending appeal." Rather, "[t]he court retains jurisdiction . . . for the limited purposes of reviewing, altering or amending the conditions under which that court released the defendant, and is empowered to revoke or forfeit the defendant's bond during the pendency of an appeal . . . ." *Id.* This holding follows from the fact that, under 18 U.S.C. § 3148, it is the district court that in the first instance has the power to grant or deny bail pending appeal. *See also* Fed.R.App.P. 9(b).

■ We therefore follow *United States v. Miller, supra*, in holding that the relevant issue is whether appellants agreed to be liable during appeal "by the language of [their] undertaking," 539 F.2d at 449. The bond here by its terms not only was a continuing bond, which "continue[d] in full force and effect" until exoneration, but it also contained a condition that Catino surrender "to serve any sentence imposed." Thus the bond as written, imposing as it did conditions more stringent than those in the standard form of appearance bond, was on its face both a trial and appeal bond.[1] If

the surety felt that the premium charged therefor was insufficient to cover the risk after appeal was taken, it should have come forward either at the time of sentence or pending appeal.[2]

Judgment affirmed.

---

1. Indeed, the bond here contained the principal conditions found in a standard form appeal bond. According to the form submitted to us by the surety, Surety's Reply Brief at A1, the appeal bond requires that the defendant "shall surrender himself in execution of the judgment and sentence appealed from upon such day as the District Court of the United States for the Southern District of New York may direct . . . and shall appear before the District Court . . . on such day or days as shall be set for a retrial of said case . . . and shall not depart the jurisdiction of the District Court . . . without leave . . . ." The bond involved in this case included the conditions that the defendant would "abide any judgment . . . by surrendering himself to serve any sentence imposed and obeying any order or direction in

connection with such judgment," would "appear . . . in accordance with . . . orders . . . relating to [his] appearance," and would "not . . . depart the Southern District of New York except in accordance with [district court] orders." 427 F.Supp. at 1011–12. The bond here thus meets all of the above three appeal bond conditions.

2. In view of the plain language of the bond, the district court's refusal to accept the surety's offer of proof as to the practice of the district court clerk's office was proper, particularly since appellants make no claim that the bond at issue was in the form customarily used by the district court.