**GRINNELL FIRE PROTECTION SYSTEMS COMPANY, INC., a corporation, Plaintiff,**

v.

**The REGENTS OF the UNIVERSITY OF CALIFORNIA, a corporation, Defendant.**

No. C–81–3257 RFP.

United States District Court, N.D. California.

March 9, 1982.

Philip S. Warden, Dinkelspiel & Dinkelspiel, San Francisco, Cal., for plaintiff.

Donald L. Reidhaar, George L. Marchand, Mary E. MacDonald, Asst. Counsel, and Stephen P. Morrell, Berkeley, Cal., for defendant.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

### I. FACTS

This is an action filed on August 7, 1981 for breach of written contract and for money based upon diversity of citizenship within the terms of 28 U.S.C. § 1332. Plaintiff, Grinnell Fire Protection Systems Company, Inc. ("Grinnell") is a Delaware corporation with its principal place of business in Rhode Island. Defendant, Regents of the University of California ("University"), is a public corporation organized pursuant to the laws of the State of California.

Plaintiff's causes of action arise from a contract between the parties calling for Grinnell to install a fire sprinkler system in two buildings at Lawrence Berkeley Labs ("LBL"). The agreement is designated "Subcontract 480" in recognition of the fact that it is in furtherance of a "prime contract" between the University and the United States to conduct national security related energy research and development for the Department of Energy ("DOE").

Plaintiff seeks relief in the sum of $138,-866.23 plus 18 percent interest from March 31, 1981. This sum comprises $86,830 for University delays in processing contractor submittals, $30,515 for additive work, and $20,321 withheld in partial satisfaction of liquidated damages assessed for Grinnell's allegedly unexcused delay in completing the project.

### II. THE MOTION TO DISMISS OR TO STAY ACTION

The University moves to dismiss or alternatively to stay the action against it on the ground that plaintiff Grinnell has not complied with the disputes resolution clause contained in the contract upon which the action is based. Article 8A ("Disputes") is a standard dispute resolution clause found in government contracts and subcontracts. It provides for referral of fact disputes between Grinnell and the University to the University's Department of Energy (DOE) Contracting Officer.[1]

---

1. Article 8A states in full:

   1. Except as otherwise provided in this Subcontract, any dispute concerning a question of fact arising under this Subcontract which is not disposed of by agreement shall be decided by DOE Contracting Officer for the University's Contract W–7405–Eng–48, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the University and the Subcontractor. The decision of the Contracting Officer shall be final and conclusive unless within 30 days

Grinnell answers that Article 8A is unenforceable under the terms of Cal.Civ.Code § 1670, which governs arbitration in public agency construction contracts such as Subcontract 480. Section 1670 prohibits a party to a contract, or that party's agent or employee, from arbitrating disputes arising under the contract.[2] Plaintiff alleges in the alternative that the arbitration provision is unconscionable and hence unenforceable under the terms of *Graham v. Scissor Tail Inc.*, 28 Cal.3d 807, 824, 171 Cal.Rptr. 604, 623 P.2d 165 (1981).

The University has replied that section 1670 and the California unconscionability doctrine are both inapplicable because the contract in dispute is governed by federal rather than state law. It further argues that even under the applicable California law, the arbitration provision of the contract is valid and binding upon the plaintiff.

It is undisputed that if federal law applies and the arbitration is not otherwise infirm, the subcontractor is not entitled to seek relief in a district court without first exhausting the administrative remedies described in the clause. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 508, 512, 87 S.Ct. 1177, 1180, 1182, 18 L.Ed.2d 256 (1967); *Kyle Engineering Co. v. Kleppe*, 600 F.2d 226, 230 (9th Cir.1979).

### III. CHOICE OF LAW

■ Whether state or federal law applies to disputes brought under the court's diversity jurisdiction depends upon the degree to which the outcome will affect the interests of the federal government. *Bank of Amer-*

*ica National Trust & Savings v. Parnell*, 352 U.S. 29, 77 S.Ct. 119, 1 L.Ed.2d 93 (1956); *Pankow Const. Co. v. Advance Mortgage Corp.*, 618 F.2d 611, 613 (9th Cir.1980). The application of federal law is appropriate where "a uniform national rule" is necessary to further federal interests, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), or where "there is significant conflict between some federal policy or interest and the use of state law," *Miree v. DeKalb County*, 433 U.S. 25, 29, 97 S.Ct. 2490, 2493, 53 L.Ed.2d 557 (1977), *quoting Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966).

■ In diversity cases involving contract disputes, the federal courts ordinarily apply state law. *Reliance Finance Corp. v. Miller*, 557 F.2d 674 (9th Cir.1977); *C.R. Fredrick, Inc. v. Borg-Warner Corp.*, 552 F.2d 852 (9th Cir.1977). *See generally Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Similarly, state law normally controls the construction of contracts between government contractors and their subcontractors. *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.*, 292 F.2d 640 (9th Cir.1961); *Peter Kiewit Sons' Co. v. Summit Construction Co.*, 422 F.2d 242 (8th Cir.1969); 1A Moore's Federal Practice (1980) § 0.321. *See also* the Ninth Circuit Miller Act cases collected in *United States v. Western Casualty & Surety Co.*, 498 F.2d 335, 338 n. 4 (9th Cir.1974). However, where the federal interest in the subcontract is sufficient, federal law will con-

---

from the date of receipt of such copy the Subcontractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to DOE. The decision of DOE or its duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this Article 8, Subcontractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, Subcon-

tractor shall proceed diligently with the performance of the Subcontract and in accordance with the Contracting Officer's decision.

2. Cal.Civ.Code § 1670 (Arbitration of Construction Contracts with a Public Agency) provides:

Any dispute arising from a construction contract with a public agency, which contract contains a provision that one party to the contract or one party's agent or employee shall decide any disputes arising under that contract, shall be resolved by submitting the dispute to independent arbitration, if mutually agreeable, otherwise by litigation in a court of competent jurisdiction.

trol. *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co.,* supra at 644; *United States v. Taylor,* 333 F.2d 633 (5th Cir.1964), *adhered to on rehg.,* 336 F.2d 149 (5th Cir.1964).[3]

According to the defendant, the federal interest involved here is that of national defense and security. At the hearing on this motion, defense counsel represented that the prime contract from which Subcontract 480 arises is the basic agreement between the federal government and the University of California governing Lawrence Berkeley Labs. Exhibit A, attached to the Declaration of George Marchand, who is an attorney for the University, shows that the prime contract between the University and the DOE "is subject to the paramount objective of assuring the common defense and security of the United States." (*Id.* at p. 1, paragraph 3). The nature and scope of the program is further described as follows:

Work under this contract will, in general, comprise research, development, and educational activities related to the nuclear sciences and the use of energy in mutually *selected military and peaceful applications,* and such other related activities as the parties may agree upon from time to time, including operations both at the Laboratories and at such other sites as have been or may be agreed upon by the parties hereto either within or without the continental limits of the United States. Due to the critical character of the work from the standpoint of the *national defense and security,* it is understood by the parties hereto that *very close collaboration* will be required between the University and the Administration with respect to direction, emphasis, trends and adequacy of the total program. This will include engineering services and construction work in connection with alterations and new construction required in the conduct of the program.

Exhibit A, Declaration of George Marchand, Defendant's Reply Brief (emphasis added).

■ In view of the prime contract involved, we believe that federal law should control the interpretation and enforcement of Subcontract 480. This result is compelled by two decisions addressing facts similar to those now before the court.

In *American Pipe & Steel Corp. v. Firestone Tire & Rubber Co., supra,* the Ninth Circuit Court of Appeals held that federal law governed subcontracts stemming from a defense contract to which the United States was a party. That case involved a prime contract to build missiles and a subcontract to produce missile parts. In reaching its decision, the court emphasized the importance of having a uniform federal policy where national security, and especially the cost of national security, is involved. *Id.* at 644.

In *United States v. Taylor, supra,* the Fifth Circuit applied federal law to uphold the validity of an arbitration clause very like the one at issue here. Although the prime contract involved the Atomic Energy Commission, the court found it unnecessary to rely upon national security interests, but

3. *See also F.D. Rich v. Industrial Lumber Co.,* 417 U.S. 116, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974). There, the United States Supreme Court held that federal law should control the award of attorney's fees in Miller Act suits between a contractor and a subcontractor. In so holding, the Supreme Court overruled a decision of the Ninth Circuit Court of Appeals which had permitted plaintiff to recover attorney's fees on the authority of California law. Justice Marshall wrote for the Court:

We think the Court of Appeals erred in its construction of the statute. The Miller Act provides a federal cause of action, and the scope of the remedy as well as the substance of the rights created thereby are matters of federal not state law. Neither respondent nor the court below offers any evidence of congressional intent to incorporate state law to govern such an important element of Miller Act litigation as liability for attorneys' fees. Many federal contracts involve construction in more than one State, and often, as here, the parties to Miller Act litigation have little or no contact, other than the contract itself, with the State in which the federal project is located. The reasonable expectations of such potential litigants are better served by a rule of uniform national application.

*Id.* at 127, 94 S.Ct. at 2164.

chose instead to emphasize the federal interest in the expeditious and inexpensive resolution of disputes, as well as the direct supervisory role the government played with respect to the contractor and subcontractor. We note that the above quoted passage from the University—DOE prime contract also emphasizes the important supervisory role of the government.

In view of the decisions in *American Pipe* and *Taylor,* and the uncontradicted factual showing of the University regarding its prime contract with the DOE, we hold that construction of Subcontract 480 is governed by federal law. Consequently, Grinnell is not entitled to seek relief in this court until it has complied with the contract's arbitration clause. Because federal law controls, we need not and do not reach the question whether that clause is enforceable under California law.

### IV. DISPOSITION

█ It remains for us to determine whether the appropriate course is to dismiss or to stay the present action. The University has moved to dismiss or to stay the action alleging that Grinnell's failure to arbitrate and to exhaust administrative remedies deprives this court of jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Alternatively, it urges that the contract at issue affects interstate commerce, and therefore must be stayed pursuant to section 3 of the Federal Arbitration Act. 9 U.S.C. § 3.[4]

We believe that the proper course under either authority is to stay the present action until arbitration and administrative review are concluded. *William S. Gray & Co. v. Western Borax Co.,* 99 F.2d 239 (9th Cir. 1938); *American Guaranty Co. v. Caldwell,* 72 F.2d 209 (9th Cir.1934); *United States v. American Employers Ins. Co. of Mass.,* 290 F.Supp. 139, 140 n. 2 (D.S.C.1968); 9 U.S.C. § 3.

SO ORDERED.

4.  9 U.S.C. § 3 provides:
    If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.