**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PEOPLE'S ELECTRIC
COOPERATIVE, an Oklahoma rural
electric cooperative corporation,

   Plaintiff - Appellant,

v.

WESTERN FARMERS ELECTRIC
COOPERATIVE, an Oklahoma rural
electric cooperative corporation,

   Defendant - Appellee.

No. 14-6193
(D.C. No. 5:12-CV-01314-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **LUCERO** and **MATHESON**, Circuit Judges.

People's Electric Cooperative ("PEC") appeals the district court's grant of

summary judgment to Western Farmers Electric Cooperative ("WFEC").  PEC seeks

to reclaim a hydropower allocation it transferred to WFEC in 1977.  Exercising

jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I

PEC is an Oklahoma rural electric distribution cooperative that supplies retail power to its customers. WFEC is an Oklahoma rural electric generation and transmission cooperative that supplies wholesale power to its members. The Southwest Power Administration ("Southwest") is an agency of the U.S. Department of Energy that markets hydropower to rural electric cooperatives.

PEC began purchasing power from Southwest in 1951. In the late 1960s, Southwest determined that it was unable to provide its customers with their full hydropower needs, and informed PEC that it would no longer do so when its contract expired in 1977. Consequently, PEC sought other sources of power. It joined WFEC, which agreed to provide PEC's full power needs. PEC agreed to allow WFEC to negotiate with Southwest for delivery of hydropower on its behalf. In so doing, PEC relinquished to WFEC its hydropower allocation from Southwest. WFEC and Southwest entered into a Power Sales Contract in 1977 under which WFEC would deliver hydropower to PEC for a 20-year term. The parties later extended the contract through 2012. That year, they executed a new contract. All relevant provisions, rights and obligations from the 1977 contract remain unchanged.

PEC terminated its membership in WFEC on March 26, 2013. When WFEC refused to return to PEC its historic hydropower allocation, PEC sued, arguing that it is a third-party beneficiary of the 1977 Power Sales Contract. PEC seeks to receive its historic hydropower allocation as a benefit it claims was intended under the

contract. The district court granted summary judgment in favor of WFEC. PEC timely appealed.

## II

### A

Unlike the district court, we conclude that Oklahoma law, not federal common law, governs this dispute. "[T]he involvement of an area of uniquely federal interest establishes a necessary, not a sufficient, condition for the displacement of state law [by federal common law]." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 692 (2006) (ellipsis and quotations omitted). Following the Supreme Court's decision in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the instances in which federal common law applies are "few and restricted." Wheeldin v. Wheeler, 373 U.S. 647, 651 (1963). "[A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating conflicting rights of States or our relations with foreign nations, and admiralty cases." Texas Indus., Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 641 (1981). Accordingly, we have held:

> [W]hen the federal government has an articulable interest in the outcome of a dispute, federal law governs. Thus, if diverse resolutions of a controversy would frustrate the operations of a federal program, conflict with a specific national policy, or have some direct effect on the United States or its treasury, then federal law applies.

Howard v. Grp. Hosp. Serv., 739 F.2d 1508, 1510-11 (10th Cir. 1984) (citations and footnote omitted).

In the case at bar, although Southwest is a federal agency, it is not a party to the suit, and the litigation therefore "does not touch the rights and duties of the United States." Bank of Am. Nat'l Trust & Sav. Ass'n v. Parnell, 352 U.S. 29, 33 (1956). Regardless of which party prevails in this dispute, Southwest will continue to provide hydropower to a rural electric cooperative. The only question is whether it will supply the power to PEC or to WFEC. There is no indication that the resolution of the case in favor of either party will frustrate the operations of a federal program or conflict with a national policy. Accordingly, we hold that Oklahoma law governs the dispute. See Anderson v. Eby, 998 F.2d 858, 864 (10th Cir. 1993) (holding that state law controlled third-party beneficiary claim based on a contract with the federal government when resolution of the contract dispute did not frustrate a national policy or any federal operations).

**B**

We review a district court's grant of summary judgment de novo, viewing the evidence and drawing reasonable inferences in the light most favorable to the non-moving party. Seifert v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan., 779 F.3d 1141, 1150 (10th Cir. 2015). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under Oklahoma law, "the paramount objective of contract interpretation is to effectuate the intent of the parties as expressed by the terms of the contract." Walker v. Builddirect.com Techs. Inc., No. 112,075, 2015 WL 2074964, at *2 (Okla. May 5, 2015) (to be published in P.3d).  Unambiguous, clear, and consistent terms will be enforced to carry out the expressed intention of the parties.  Phillips v. Estate of Greenfield, 859 P.2d 1101, 1104 (Okla. 1993).  A non-party to a contract "may avail himself of its benefits . . . if it appears the parties intended to recognize him as a beneficiary."  Keel v. Titan Constr. Corp., 639 P.2d 1228, 1231 (Okla. 1981).  To enforce a contract as a third-party beneficiary, the "contract must be made for the express benefit of [the] third-party."  Roye Realty & Developing, Inc. v. Watson, 2 P.3d 320, 329 (Okla. 1996).  Third parties who benefit only incidentally from a contract cannot enforce it.  Lynn v. Rainey, 400 P.2d 805, 814 (Okla. 1964).  A party is an incidental beneficiary if a contract was not expressly made for its benefit.  See Copeland v. Admiral Pest Control Co., 933 P.2d 937, 939 (Okla. Civ. App. 1996).

PEC argues that it is a third-party beneficiary of the 1977 Power Sales Contract based on the emphasized language in two provisions of the contract:

> WHEREAS, in establishing the total quantity of peaking power and energy to be purchased by [WFEC] from [Southwest], the parties hereto have included the quantities of such power and energy which [Southwest] would otherwise make available for purchase by seven [WFEC] member cooperatives [including PEC] in Oklahoma which previously purchased firm power service from [Southwest] under contracts which expired on June 30, 1977, and to which, by contract with each such member cooperative, [WFEC] is obligated to furnish and deliver, or cause to be furnished and delivered, the power and energy required to fulfill their system load requirements[.]

-5-

It is further recognized that the "Eastern Member Cooperatives" [including PEC] are and have been purchasing firm power service from [Southwest] which was and is delivered, for the account of [Southwest], from the systems of Oklahoma Gas and Electric Company and Public Service Company of Oklahoma . . . under contracts the effective terms of which expired on June 30, 1977, and that such firm power service has been continued at the request of the "Eastern Member Cooperatives" on a month-to-month basis, but to a date not later than November 30, 1977. It is also recognized that in allocating the quantity of "Hydro Peaking Power" and associated energy to be purchased by [WFEC] under Article II, hereof, [Southwest] included quantities of power and energy which [Southwest] had allocated and would otherwise make available for purchase by the "Eastern Member Cooperatives."[1]

According to PEC, the emphasized language means that WFEC would receive PEC's power allocation only so long as WFEC continued to deliver power to PEC, and reflects that the parties intended for PEC to reclaim its hydropower allocation if it stopped receiving power from WFEC.

But the language on which PEC relies does not provide for the return of hydropower allocations upon expiration of the contract. The contract does not state what will happen if PEC stops receiving power from WFEC. Thus, the parties did not express an unambiguous intent for the hydropower allocation to be returned to PEC. Cf. Phillips, 859 P.2d at 1104. Instead, the 1977 Contract states that PEC's contract with Southwest expired on June 30, 1977 and was to continue to no later than November 30, 1977, suggesting that the parties did not intend to return the power allocation to PEC. This language hardly constitutes a clearly expressed intent

---

[1] PEC does not claim that Article II of the contract supports its third-party beneficiary claim.

to benefit PEC.  Cf. Keel, 639 P.2d at 1231.  Rather, recognition that WFEC is obligated to furnish PEC with its full power needs, and that Southwest formerly furnished PEC with power, makes PEC an incidental beneficiary of the contract.  Cf. Copeland, 933 P.2d at 939.  The purpose of the contract is not to benefit PEC.  It is to establish the terms under which WFEC is to purchase power from Southwest, some of which was formerly allocated to PEC.

Accordingly, we conclude that the terms of the 1977 Power Sales Contract are not ambiguous, and that WFEC is entitled to summary judgment.  See Ahlschlager v. Lawton Sch. Dist., Indep. Sch. Dist. 008 of Comanche Cnty., 242 P.3d 509, 515 (Okla. 2010) ("The construction of an unambiguous contract is a matter of law for the court.").  We thus need not consider extrinsic evidence to ascertain the intent of the parties.  See id.  The unambiguous terms do not demonstrate that the contract was made for the express benefit of PEC, as required for third-party beneficiary status.  PEC thus may not maintain an action to enforce the contract.  See Lynn, 400 P.2d at 814.  This conclusion obviates our need to consider WFEC's alternate grounds for affirmance.

### III

The judgment of the district court is **AFFIRMED**.

Entered for the Court

Carlos F. Lucero
Circuit Judge